# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL COMPLAINT |
| v. | : | |
| GREGORY J. GIBSON, JR. a/k/a Lemar Gibson | : | Mag. 07-5005 |
| JOSEPH WALKER | : | |
| PHONG QUOC TRINH | : | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. Between in or about January 11 through in or about January 12, 2007, in Mercer County, in the District of New Jersey and elsewhere, the defendants GREGORY J. GIBSON, JR., JOSEPH WALKER and PHONG QUOC TRINH did:

### SEE ATTACHMENT A

contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), all in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

I further state that I am a Special Agent, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached page and made a part hereof.

SA _____
Steve Ortman, Special Agent
Drug Enforcement Administration

Sworn to before me and subscribed in my presence,

January __, 2007, at Trenton, New Jersey

HONORABLE TONIANNE BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE

_____
Signature of Judicial Officer

## ATTACHMENT A

Between in or about January 11, 2007 through in or about January 12, 2007, in Mercer County, in the District of New Jersey and elsewhere, defendants GREGORY J. GIBSON, JR., JOSEPH WALKER AND PHONG QUOC TRINH did conspire and agree, with each other and others, to distribute and to possess with intent to distribute five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), all in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

ATTACHMENT B

I, Steve Ortman, am a Special Agent with the Drug Enforcement Administration ("DEA"). I have knowledge of the following facts from my own investigation and discussions with and review of reports of other law enforcement officers. Because this Affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a Complaint, I have not included each and every fact known by the Government concerning this investigation. All conversations are recounted in sum and substance.

1. From as early as July, 2005, or earlier, several confidential informants and cooperating witnesses (in interviews) identified GREGORY J. GIBSON, JR (a/k/a Lemar Gibson) and PHONG TRINH to DEA agents and other law enforcement officers/agents in New Jersey and Pennsylvania as multi-kilogram cocaine distributors in the Trenton, New Jersey and Philadelphia, Pennsylvania area.

2. As a result of 2006 court orders by Judge Maria Sypek of the New Jersey Superior Court, authorizing the interception of wire communications, members of the Mercer County Prosecutor's Office, Trenton Police Department, NJ Attorney General's Office-Division of Criminal Justice, FBI and other law enforcement agents participated in a joint investigation and engaged in the interception and recording of numerous drug related phone calls between GREGORY J. GIBSON, JR (a/k/a Lemar Gibson) and PHONG TRINH.

3. On January 11, 2007 at approximately 4:18 p.m., a telephone call was intercepted over cellular telephone facility number 609-638-7270 from 609-218-2016, subscribed to by Dorothea Prunetti, 441 Walker Avenue, West Trenton, New Jersey. A conversation ensued between an individual believed to be Sharon Prunetti and Gibson. During the conversation Prunetti stated, "I need to come over." Gibson replied, "Alright."

4. On January 11, 2007, at 4:55 p.m., a telephone call was intercepted over cellular telephone facility number 609-638-7270 from 609-218-2016 A conversation ensued between the individual believed to be Sharon Prunetti and Gibson. During the conversation Prunetti stated, "Hey where you at?" Gibson replied, "Where you at?....Where you at?" Prunetti replied, "Oh, um I'm in the parking lot." Gibson replied, "Alright, well, come to the door. I'm about to get Adrian to move the car." Prunetti replied, "Uh, okay, the front, the back door, there's like eighteen doors." As a result of the above listed intercepted conversations, Detectives Russell and Pope initiated a surveillance in the area of Gibson's residence, 290 N. Willow Street. At approximately 4:56 p.m., Detective Pope observed a white female who he knows personally as Sharon Prunetti, enter the right front door to 290 N. Willow Street, which leads to the second and third floors of the home.

5. On January 11, 2007, at 5:00 p.m., a telephone call was intercepted over cellular telephone facility number 609-638-7270 from 609-571-8656, subscribed to by George Pritchett, 30 Cambridge Drive, Ewing, New Jersey. A conversation ensued between an individual believed to be George Pritchett and Gibson. During the conversation, Pritchett stated, "Yeah, I'm at...downstairs yo....Open the door for me. Let me, you know." Gibson replied, "Here I come." During this time, Detective Pope observed a black male, known to Detective Pope as George Pritchett through a previously viewed photograph, approach the front of 290 N. Willow Street while talking on a cellular telephone. At approximately 5:01 p.m., Detective Pope observed Sharon Prunetti exit the right front door of 290 N. Willow Street. Prunetti then entered the front left door, which leads to the first floor of 290 N. Willow Street. Detective Pope then observed Pritchett follow Prunetti into the first floor of 290 N. Willow Street. At approximately 5:02 p.m., Detective Pope observed Gregory Gibson exit the right front door which leads to the second

3

and third floors of 290 N. Willow Street and walk directly through the left front door into the first floor of the residence. At approximately 5:03 p.m., Detective Pope observed Prunetti, Pritchett and Gibson exit the left front door of 290 N. Willow Street. Pritchett and Prunetti walked across N. Willow Street and Gibson proceeded to 286 N. Willow Street and entered the front door. It should be noted that the affiant believes that Pritchett and Prunetti are drug users, from previous calls to Gibson during the investigation.

6. Based upon my training and experience and the facts of the investigation up until this date, I believe the above conversations are drug related. I believe that Prunetti initially called Gibson to tell him that she wanted to purchase a quantity of cocaine ("I need to come over."). Gibson told her to come to his residence ("Alright."). Once Prunetti arrived at 290 N. Willow Street, she called Gibson to ask him where she should meet him to conduct the cocaine transaction ("Hey where you at?"). Gibson told her to come to the door but did not tell her what door to enter ("Alright, well, come to the door. I'm about to get Adrian to move the car." Prunetti replied, "Uh, okay, the front, the back door, there's like eighteen doors."). I believe as Prunetti walked up to 290 N. Willow Street, Gibson allowed her entrance into the right front door, which leads to the second and third floors. I also believe that George Pritchett called Gibson to purchase a quantity of cocaine and was aware that Gibson was in his residence ("Yeah, I'm at…downstairs yo….Open the door for me. Let me, you know."). I also believe that Gibson was previously aware of the quantity of cocaine Pritchett wished to purchase. I believe that Gibson then instructed Prunetti to go to the first floor of 290 N. Willow Street and wait for him to bring her the requested quantity of cocaine. I also believe that Gibson instructed Prunetti to tell Pritchett to wait with her on the first floor for his cocaine. I further believe that Gibson retrieved a quantity of cocaine from the second and third floor area of 290 N. Willow Street and distribute it to Prunetti and Pritchett in the first floor of his residence.

7. On January 11, 2007 at approximately 9:45 p.m., a telephone call was intercepted over cellular telephone facility number 609-638-7270 from 718-358-4625, subscriber information not yet received. A conversation ensued between the individual believed to be Phong Trinh and Gibson. During their conversation, Trinh stated, "What are you doing?.... Happy New Year boy, I'm gonna come, you're gonna come see me tomorrow, okay?" Gibson replied, "Yeah." Trinh stated, "You gonna come see me tomorrow ok, have your phone. What happened to your other phone?" Gibson replied, "What, man this shit's expired, I don't know." Trinh stated, "Oh expired, don't put minutes on there cause I guess you don't think I'm gonna call you." Gibson replied, "Come on man….What time?" Trinh stated, "You're gonna come see me tomorrow, I don't know….Probably like around, around dinner, dinner time, or maybe lunch time not sure. Maybe more like lunch time, like around noon, come up for some burger's we'll have lunch." Gibson replied, "Yeah alright….Man make sure cause I been ahh…" Trinh stated, "Oh no man, I'm, why you think I'm calling you….I'm a call. I guess I gotta call ya here right? Gibson stated, "Yeah." Trinh replied, "And I'll have a new one for ya tomorrow."

8. Based upon my training and experience and the facts of the investigation up until this date, I believe the above conversation is drug related. I believe that Trinh called Gibson to tell him that he has a quantity of cocaine for Gibson and that he wanted Gibson to come get it the following day ("What are you doing?....Happy New Year boy, I'm gonna come, you're gonna come see me tomorrow, okay?" Gibson replied, "Yeah."). During the conversation, Trinh asked Gibson what happened to the telephone that Trinh gave Gibson for them to talk on exclusively ("You gonna come see me tomorrow ok, have your phone. What happened to your other phone?"). Gibson told Trinh that the phone did not have any minutes left on it ("What, man this shit's expired, I don't know."). Gibson seemed very anxious and asked Trinh what time they (Gibson and Trinh or an associate of Trinh's) were going to meet the next day. Trinh told Gibson that they would most likely meet around noon time for some "burgers" ("You're

4

gonna come see me tomorrow, I don't know....Probably like around, around dinner, dinner time, or maybe lunch time not sure. Maybe more like lunch time, like around noon, come up for some burger's well have lunch."). Gibson cryptically told Trinh to make sure that they were going to meet him because his current supply of cocaine is running out ("Yeah alright....Man make sure cause I been ahh..."). Trinh then told Gibson that he understood and that was why he was calling him ("Oh no man, I'm, why you think I'm calling you"). Arrangement were then made for Trinh to call Gibson on Gibson's 609-638-7270 cellular telephone tomorrow to confirm the time of the meeting. Trinh also told Gibson that he would bring him a new telephone for Gibson and Trinh to communicate on (I'm a call. I guess I gotta call ya here right? Gibson stated, "Yeah." Trinh replied, "And I'll have a new one for ya tomorrow.").

9. On January 12, 2007 at approximately 10:51 a.m., a telephone call was intercepted over cellular telephone facility number 609-638-7270 from 215-459-0537, subscriber information not yet received. A conversation ensued between the individual believed to be Phong Trinh and Gibson. During their conversation, Trinh stated, "Look an hour ok?" Gibson replied, "An hour where at?" Trinh replied, "Burger King, I mean the the Burger joint....Ok...I'll call you so you can leave. I'll give you like a half an hour notice." Gibson replied, "Alright."

10. Based upon my training and experience and the facts of the investigation up until this date, I believe the above conversation is drug related. I believe that Trinh called Gibson to tell him to meet him or his associate at the burger joint, possibly "Burger King", to pick up a quantity of cocaine (Trinh stated, "Look an hour ok?" Gibson replied, "An hour where at?" Trinh replied, "Burger King, I mean the the Burger joint....Ok"). Trinh told Gibson that he would call him again to give him time to leave for the meeting location ("I'll call you so you can leave. I'll give you like a half an hour notice.").

11. On January 12, 2007 at approximately 11:41 a.m., a telephone call was intercepted over cellular telephone facility number 609-638-7270 from 215-459-0537. A conversation ensued between the individual believed to be Phong Trinh and Gibson. During their conversation, Trinh stated, "Yo, ... head out here....head over to the burger." Gibson replied, "Alright."

12. Based upon my training and experience and the facts of the investigation up until this date, I believe the above conversation is drug related. I believe that Trinh called Gibson to tell him to leave his house and proceed to the aforementioned burger joint to meet him or his associate to receive a quantity of cocaine.

13. At approximately 11:57 a.m., surveillance officers observed Gibson leave his house at 290 N. Willow Street and depart the area in his white Dodge Dakota pickup truck, New Jersey registration VGJ52M. Surveillance officers followed Gibson as he traveled through Trenton onto Route 1 South into Pennsylvania. Gibson then proceeded onto 95 South heading towards Philadelphia. At the same time, the agent and officers received information that Joseph Walker's Ford pick up truck, Pennsylvania registration YSH2790, was currently driving around the area of the Franklin Mills Mall, Philadelphia, Pennsylvania. This information was received from a GPS device previously installed on the vehicle by the agents.

14. At approximately 12:25 p.m., surveillance units following Gibson observed him exit 95 South at the Franklin Mills Mall exit and proceed to the Wendy's restaurant, located at 399 Franklin Mills Boulevard. Gibson exited his vehicle and entered the restaurant. A short time later, Gibson exited the restaurant and reentered his vehicle. Shortly thereafter, surveillance units observed Joseph Walker proceed into the parking lot of the aforesaid Wendy's restaurant and park his blue pick up truck near Gibson's white Dodge Dakota. Walker then exited his vehicle and walked over to the driver's side of

Gibson's vehicle. Gibson exited the vehicle and both he and Walker walked over to Walker's blue pick up truck. Gibson then removed a brown box from the bed of Walker's pick up truck and placed it in the bed of his pickup truck. The box appeared to be 1' x 1' x 1' in dimension. Both Walker and Gibson subsequently departed the parking lot of the Wendy's restaurant in their respective vehicles. Surveillance units then maintained a continuous surveillance of Gibson as he proceeded onto 95 North, onto Route One North towards Trenton. Gibson exited onto Perry Street and was stopped and detained at the corner of Stockton and Perry Streets. Located in the bed of Gibson's pick-up truck was a brown cardboard box with an orange Public Storage emblem on the side. The initials P.F. are in the emblem. There is clear tape across the top of the box. The words name, contents, order # are on top of the box underlined in purple. There is gray duct tape on the bottom of the box.

15. On January 12, 2007, at approximately 4:00 p.m., Detective Michael Novembre, of the Mercer County Prosecutor's Office, obtained a state search warrant for the cardboard box recovered from Gregory Gibson's pickup truck. It should be noted that a trained narcotic detection dog had alerted to the cardboard box prior to the issuance of the search warrant. Upon executing the warrant, Detective Novembre observed that the cardboard box contained ten kilogram size packages. Lt. Straniero conducted a field test on one of the packages which resulted in a positive reaction for the presence of cocaine.

16. On January 12, 2007, at approximately 4:00 p.m., Detective Novembre also obtained a search warrant for Gibson's residence, 290 N. Willow Street, Trenton, N.J. At approximately, 4:30 p.m., the warrant was executed and the following items were located and seized from the first floor bedroom.

- (1) Glock 17, 9 millimeter handgun, serial number MP557US
- (1) Smith & Wesson Chief's Special 40 caliber handgun serial number EKZ24024
- (1) 7.35 caliber bolt action rifle serial number SAD3900
- (1) 30 caliber rifle serial number 1919
- (1) AK47 Assault rifle, 7.62 caliber serial number 1-580-24-03
- (1) 22 caliber/410 shotgun over/under rifle/shotgun
- approximately 500 grams of suspected cocaine
- approximately ½ pound of suspected marijuana
- numerous boxes of 9 millimeter and 38 caliber ammunition
- bills and documents containing the name Gregory Gibson

17. The following items were located on the 2nd floor of 290 N. Willow Street, Trenton, N.J

- Approximately 500 grams of suspected cocaine was located in a blue air travel bag. The blue air travel bag had a claim check ticket with the name "Gregory Gibson" attached to it.
- Located under the blue bag was a white plastic bag containing $19,000 in U.S. currency.
- Located in the rear bedroom was $21,726.
- Located throughout the residence were documents, real estate and vehicle titles with the name "Gregory Gibson" and address 290 N. Willow Street, Trenton, N.J.

18. A criminal record check revealed that Phong Trinh has a prior felony drug arrest in 1997, in Philadelphia, for the possession with the intent to distribute approximately 41 pounds of marijuana. The affiant is not aware of the disposition of this charge at this time.

19. Additionally, it should be noted that on July 4, 2005, 22 kilograms of cocaine were seized in Wichita, Kansas, from a motor vehicle that was being operated by Long Dang, an associate of Phong Trinh, that were believed to belong to Phong Trinh according to other law enforcement agents. On July 7, 2005, Joseph Walker attempted to post $55,000 using a cashier's check as bail for the release of Long Dang. DEA Agents seized the $55,000 from Joseph Walker, however, Dang was subsequently released from custody and is now a fugitive of the United States District Court for the District of Kansas. A review of bank records obtained by the affiant showed that the $55,000 obtained by Joseph Walker which he attempted to post as bail in the Long Dang case, had actually been withdrawn from a Wachovia bank account belonging to Phong Trinh and his girlfriend, Ada Criado Ortiz (account no. 101041913786).

20. Walker has been observed meeting with Gregory Gibson on several occasions by agents conducting surveillance during the investigation. The affiant believes that these meetings occurred so that Gibson could receive additional quantities of cocaine, which were being supplied by Phong Trinh and so that Trinh could receive cash payments from Gibson for the purchases of kilogram quantities of cocaine. This belief is in part based on several recorded telephone conversations between Trinh and Gibson, which occurred prior to each of the meetings between Gibson and Walker.